UNITED STATES DISTRICT COURT                    ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ABID GHAFFAR,

                       Plaintiff,                    MEMORANDUM AND ORDER

        -against-                    09-CV-509 (JG) (VVP)

WILLOUGHBY 99 CENT, INC.,

                       Defendant.
------------------------------------------------------------------x
A P P E A R A N C E S:

        JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM, LLP
                757 Third Avenue, 25th Floor
                New York, New York 10017
        By:    Denise A. Schulman
                *Attorneys for Plaintiff*

        ARTHUR H. FORMAN
                98-20 Metropolitan Avenue
                Forest Hills, New York 11375
                *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Abid Ghaffar brings this action against his former employer, Willoughby 99 Cent,

Inc. ("Willoughby"). He claims that he was unlawfully fired for exercising his right to take leave

under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. Willoughby

moves for summary judgment. Ghaffar opposes Willoughby's motion and cross-moves for

partial summary judgment, arguing that Willoughby is subject to the FMLA. For the reasons

discussed below, I deny Willoughby's motion and grant Ghaffar's.

BACKGROUND

        The following facts are either undisputed or construed in the light most favorable

to the defendant:

In 2007, Mohammed Memon owned and operated, through six corporations, six discount stores in New York that generally sold the same type of merchandise -- inexpensive groceries, hardware, clothing, toys, and stationery.[1] None of the stores was particularly big; the total number of employees working in them between January and November ranged from 39 to 48. From an office in Queens, Memon monitored the stores, two more closely than the others, and he employed Farook Begawala to supervise the day-to-day operations of the rest. Each store also had its own manager.

At the four stores he supervised, Begawala oversaw the managers' merchandising, payroll, and personnel decisions. Although each store manager was responsible for ordering inventory for his store, Begawala had input into what merchandise was ordered and the stores received discounts from vendors because of their combined buying power. Begawala approved requests by store managers to hire employees and sometimes recommended the former employees of one store for available positions at other stores. He also approved requests by store managers for time off, but he was not involved with scheduling the hours of the other store employees -- the managers handled that themselves. As part of his duties, he visited each of the stores he supervised several times a week. When Begawala was not visiting stores, he worked out of Memon's office in Queens with two other employees, Syed Ibrahim and Mohammad Yunus, who completed financial and administrative tasks for all six stores and reported to Begawala.

Memon shared the Queens office with his cousin, Zubair Qasim, who also owned and operated several discount stores in New York. Although Memon and Qasim worked out of

---

[1]    The parties refer to the six stores as Willoughby, Hoyt, East Meadow, Hillside, Royal Deals, and Store Seventeen. *See, e.g.*, Ex. A to Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment.

the same office, they were not generally involved in the management of each other's stores, and Qasim employed his own assistant, Najmu Butt, to complete administrative tasks for the stores Qasim owned and operated.  Qasim did, however, employ Begawala to help manage one of his stores, located in Bayside, Queens, and would occasionally accompany Begawala on his visits to Memon's stores.  In addition, Memon and Qasim linked the checking accounts of four of Memon's stores with the checking account of one of Qasim's stores, located on Church Avenue in Brooklyn, to save bank fees.

In 1998, Memon hired plaintiff Abid Ghaffar as the manager of one of the stores, a dollar store on Willoughby Avenue in Brooklyn that he owned indirectly through the defendant corporation Willoughby.  Although Begawala had criticized Ghaffar numerous times for failing to keep enough merchandise, or the right kind of merchandise, on the shelves and blamed him for the store's poor performance, Ghaffar remained the store's manager in 2008.  In March of that year, Ghaffar asked Begawala for permission to take leave to care for his ailing parents in Pakistan.  Begawala said yes, and Ghaffar traveled to Pakistan from July 1 to July 15. Upon his return, Ghaffar called Qasim and told him that he was ready to go back to work.  Qasim asked him to instead come to his home, and there informed him of Begawala's decision to fire him.

On February 2, 2009, Ghaffar filed this action.  The first cause of action in his complaint alleges that Willoughby interfered with his rights under the FMLA by not restoring him to his previous position or an equivalent one when he returned from leave.  The second alleges that Willoughby discriminated or retaliated against him for taking protected leave both by terminating him and by failing to restore him to his previous position or an equivalent one.

DISCUSSION

A.    *Standard*

Summary judgment is appropriate only if "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c)(2).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712,

720 (2d Cir. 2010).  "A fact is material if it might affect the outcome of the suit under the

governing law."  *Id.*  When applying this standard, the court must "resolve all ambiguities, and

credit all factual inferences that could rationally be drawn, in favor of the party opposing

summary judgment."  *See Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).

B.    *Analysis*

1.    *Applicability of the FMLA*

The FMLA entitles an eligible employee of a covered employer to twelve

workweeks of leave during any twelve-month period to care for a parent with a serious health

condition, 29 U.S.C. § 2612(a)(1)(C), and to restoration to his previous position or an equivalent

one when he returns from leave.  *Id.* § 2614(a)(1).  Willoughby does not dispute that Ghaffar was

eligible to take leave protected by the FMLA if it was in fact a covered employer.[2]  It argues

instead that it is entitled to summary judgment because it has never employed more than a dozen

people, and so is not subject to the FMLA, which applies only to employers with "50 or more

employees for each working day during each of 20 or more calendar workweeks in the current or

---

[2]        "An 'eligible employee' is an employee of a covered employer who: (1) Has been employed by
the employer for at least 12 months, and (2) Has been employed for at least 1,250 hours of service during the 12-
month period immediately preceding the commencement of the leave, and (3) Is employed at a worksite where 50 or
more employees are employed by the employer within 75 miles of that worksite."  29 C.F.R. § 825.110.

preceding calendar year." 29 C.F.R. § 825.104(a). Although Willoughby is correct that the legal

entity that employs the employee is normally the employer for FMLA purposes, that is not

always the case. *See id.* § 825.104(c). Two or more entities can be treated as a single employer,

and all of their employees counted for determining whether the combined entity is subject to the

FMLA, if they meet the "integrated employer" test. *Id.* § 825.104(c)(2). The test requires a

court to examine the entire relationship of the entities and four factors in particular: 1) common

management; 2) interrelation between operations; 3) centralized control of labor relations; and 4)

degree of common ownership/financial control. *Id.*

        Ghaffar contends that applying these factors to the evidence, even construed in

the light most favorable to Willoughby, compels the conclusion that Memon's and Qasim's

stores together constituted a single integrated employer in 2007. His argument, while strong, has

significant weaknesses. There is no evidence in the record that Memon and Qasim shared profits

or any expenses other than office space. And although Begawala assisted in the supervision of

one of Qasim's stores, he worked primarily for Memon.

        I need not pass on this argument, however, to conclude on this record that

Willoughby is subject to the FMLA as a matter of law. Even taken alone, Memon's stores,

including the Willoughby store, undoubtedly constituted an "integrated employer" that employed

enough people for enough time to be subject to the statute in 2008. The stores were under the

common management of Begawala, the store managers' immediate supervisor, and Memon, to

whom Begawala reported. Their operations were interrelated -- they were all discount outlets

that sold the same sorts of goods and they received group discounts on inventory purchases.

Control of labor relations at each of the stores was also centralized. Begawala and Memon

approved hiring decisions, and although individual store managers retained discretion to set the

schedules of workers in their stores, they had to ask Begawala for permission to take time off themselves. In addition, Begawala testified that he sometimes recommended that store managers fill available positions at their stores by hiring former employees of the other stores. Finally, the degree of common ownership and financial control could not be greater; Memon wholly owned each store through a holding corporation and exercised total financial control over all of them.

Willoughby does not dispute Ghaffar's contention, based on payroll records and Begawala's testimony, that the holding corporations of the six stores owned by Memon together employed at least 50 people in January, February, April, May, and June of 2007.[3] Because these five months included at least 20 full workweeks, Willoughby and the other stores owned and operated by Memon were subject to the FMLA during the whole of the following calendar year, 2008, when Ghaffar took leave and was terminated. *See id.* § 825.105(f) ("Once a private employer meets the 50 employees/20 workweeks threshold, the employer remains covered until it reaches a future point where it no longer has employed 50 employees for 20 (nonconsecutive) workweeks in the current and preceding calendar year.").

2.     *The Retaliation Claim*

Willoughby argues that even if it is subject to the FMLA, Ghaffar's retaliation claim should be dismissed because no reasonable jury would conclude that he was fired as punishment for taking family leave. Ghaffar's claim that he was terminated as punishment for taking leave to which the FMLA entitled him is analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973), for evaluating Title VII retaliatory discharge claims. *See Potenza v. City of New York*,

---

[3]     Willoughby did not take issue -- either in its opposition to Ghaffar's motion for partial summary judgment or at oral argument -- with Ghaffar's estimate that in 2007 the holding corporations of the six stores owned by Memon together employed at least 51 people in January, 52 in February, 50 in April, 50 in May, and 51 in June. These totals include the employees working in the stores and Memon, Begawala, Ibrahim, and Yunus. *See* Ex. A to Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment.

365 F.3d 165, 168 (2d Cir. 2004).  Accordingly, to make a prima facie case, Ghaffar must

establish that "1) he exercised rights protected under the FMLA; 2) he was qualified for his

position; 3) he suffered an adverse employment action; and 4) the adverse employment action

occurred under circumstances giving rise to an inference of retaliatory intent."  *Id.*

      Willoughby does not dispute that Ghaffar has made out the first three elements of

his case.  It contends, however, that his termination did not occur under circumstances giving rise

to an inference of retaliatory intent because he admitted that he had been warned repeatedly

about his poor performance before he took leave and that he knew of some employees who were

not terminated after taking leave to visit family in other countries.

      I disagree.  Ghaffar worked as the manager of the Willoughby store for ten years

before being fired immediately upon his return from Pakistan.  These facts alone give rise to an

inference of retaliatory intent, and a reasonable jury could make that inference despite the

existence of other evidence suggesting that Willoughby acted on a legitimate basis when it fired

him.

3.    *The Interference Claim*

      Willoughby also argues that Ghaffar's claim that it interfered with his rights under

the FMLA by not reinstating him to his former position or an equivalent one must be dismissed

because his claim is properly characterized as one of "retaliation," not "interference."  But

whether Ghaffar labels his claim as one of "interference" for wrongful failure to reinstate, as he

does in the first cause of action in his complaint, or as one of "retaliation"  for wrongful

termination, as he does in the second, he is claiming that Willoughby fired him for taking

protected leave.  In this circuit, such claims -- that an employer took adverse employment action

against an employee as punishment for taking protected leave -- are governed by the *McDonnell-*

*Douglas* burden-shifting analysis. *Id.* Because, as explained above, Ghaffar has succeeded in making the prima facie case required by that analysis, Willoughby is not entitled to summary judgment on his claim, however labeled.[4]

CONCLUSION

The defendant's motion for summary judgment is denied. The plaintiff's motion for partial summary judgment is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 27, 2010
      Brooklyn, New York

---

[4] This conclusion does not change the fact that, on the facts of this case, the two causes of action in the complaint coalesce. They are governed by the same legal standard, require the same proof, and support the same damages.